[Civ. No. 24134. Second Dist., Div. Three. May 25, 1960.]

CARMEN GARCIA IMPERIAL, Respondent, v. ALBERT IMPERIAL, Appellant.

Walzer & Weinstock and Seymour M. Lazar for Appellant.

Percy Drabin for Respondent.

SHINN, P. J.—In a contested action plaintiff was awarded a divorce and community property consisting of a restaurant business and the real property in San Fernando on which the business was operated. Defendant appeals.

The complaint accused defendant of extreme cruelty. Defendant filed a cross-complaint which alleged that plaintiff had been guilty of cruelty and that ''cross-defendant has committed acts of adultery with a person other than cross-complainant.'' The evidence was confined to the respective allegations of cruelty.

The principal contention is that the evidence was

insufficient to support the finding that defendant had been guilty of cruelty. The parties were married in Las Vegas in 1940. Soon thereafter they purchased three city lots in San Fernando and constructed a building in which they opened a restaurant. For this purpose they borrowed $7,000 on the property. From that time on plaintiff managed the restaurant, did the cooking, with help from time to time, and handled the finances. In 1949 the loan on the property was increased to $12,000. Defendant went to Lower California with a truck and engaged in buying shrimp and selling it in the states. The business did not prosper and defendant opened a restaurant in Mexicali and operated it for two or three months. The evidence with respect to defendant's activities between 1949 and the separation in 1957 was sharply conflicting. Plaintiff testified that defendant spent almost all the time in Mexico; he seldom spent more than a week at a time at home—never as much as a month; defendant continually contracted debts which necessitated their borrowing more money which plaintiff had to pay; she had sent money to defendant at Mexicali and had never received any money from him; she continually asked defendant to remain at home and help her in the business and he refused. Plaintiff devoted all her time to the restaurant business, often working until 2 o'clock in the morning. The net returns from the business amount to $170 per month but the money is used to buy things and is not saved. She has reduced the debt on the property to $8,000; the property is worth some $35,000.

Plaintiff introduced in evidence over objection a letter from Miala Ruiz, dated Mexicali, October 11, 1956, addressed to defendant at the San Fernando address. The letter mentioned former correspondence with defendant and letters to defendant sent to Calexico. Miala sought immediate word from defendant and a meeting with him; she stated that she had obtained passports ''and we can pass over to Calexico, mostly sure.'' The letter read ''Say hello to Alrita, the baby. Send you many kisses, and me and myself, I am sending you many, many kisses who never forget you.'' The present action was filed in June, 1957.

Defendant testified that he borrowed an additional $5,000 on the property in 1949 and went into the business of buying shrimp in Lower California and selling it in the states. He bought a truck for use in the business but the business did not succeed, and was discontinued. In 1954 he obtained $1,600 on an insurance policy and opened a restaurant in Mexicali,

which he operated for several months; instead of being away most of the time he was never away for more than two or three months in a year, and when at home he helped in the restaurant and off and on drove a truck. He had met Miala Ruiz when she used to come into his restaurant; he never visited her. He was not questioned further on the subject nor about the baby, Alrita.

We cannot say the court erred in finding defendant responsible for the breakup of the marriage. It appears that plaintiff was emotionally upset during the trial and that it was the discovery of the letter from Miala Ruiz which led to the final separation. We must assume that the court gave full credit to the testimony of plaintiff and her corroborating witness and believed that defendant preferred to spend his time in Mexicali rather than at home helping in the business. There was ample evidence that plaintiff has had a heavy burden to carry in order to support herself and save the property and that she has had little help from defendant.

 Defendant objected to the introduction of the letter in evidence and now assigns error in its admission. The objection was stated as follows: ''Your Honor, there is no foundation as to who this letter was from, who wrote this letter, who delivered this letter. There has been absolutely nothing concerning this letter other than that it is a letter that they received. There has to be some indication, your Honor. The Court: It has been translated. Mr. Lazar: Yes, I agree, your Honor. . . .'' The objection was properly overruled. The fact that plaintiff found the letter rendered it admissible. But defendant says the letter proves nothing. He says ''Nothing in the letter is inconsistent with the possibility that the writer may have been a casual friend of the husband who sought to further the relationship.'' Defendant did not mention the baby in his testimony nor is she mentioned in his brief. Miala's letter must have persuaded plaintiff that the ''casual'' friendship had been considerably furthered. There was no evidence that Miala had a husband nor as to who might have fathered Alrita.

 In view of plaintiff's testimony respecting defendant's indifference and neglect and the reasonable inference that the unexplained association of defendant with Miala Ruiz and her child caused plaintiff humiliation and distress, we cannot say there was insufficient evidence of defendant's cruelty.

The judgment is affirmed.

Vallée, J., and Ford, J., concurred.